Yes, good morning to the court. My name is Terry Pellinger. I represent the necessaries. The only issue of great magnitude is whether insurance companies are immune from fraud, intentional fraud, not constructive fraud. Well, Mr. Pellinger, might I pose an earlier, perhaps, question of magnitude, and that has to do with our jurisdiction. And I think an important factor on that, and I wasn't able to find this really covered specifically, can you tell us about what the timing was in connection with this alteration of the limits of the policy from the $100,000 to $500,000 in relation to the filing of a lawsuit, which is what you're saying had really injured your client, the need to file a lawsuit that might not otherwise have been filed? Because it seems to me that may bear importantly on the potential for punitive damages, and if punitive damages are not in it, we may not have a jurisdictional amount in controversy. So can you tell me what the timing was on that? Yes. Is there any question that when the $100,000 limit was represented that that was an accurate representation? Yes. They were totally inaccurate representations from the beginning for over one year and nine months up through the filing of the lawsuit. The lawsuit was filed on the 27th day of July. Let's try again about when. I'm not talking about your lawsuit in that sense. I'm talking about when was it that the representation about the $100,000 was made, and was that true at that time? No, it was not from the very beginning. I cannot address without going outside of the record, because discovery was just at the beginning, but since the Court has asked me a direct question, within one month of the date of the accident, September 22nd, 2004, State Farm had knowledge that there was an umbrella policy. They may not have known the exact limits, but it was $1 million. By exactly 6-29-05, which is not — 6-29-05, the accident takes place on September 22nd, 2004, State Farm has specific knowledge, subjective knowledge, and we have the proof, as excerpt in the records will show, that they knew that there was an umbrella policy and the limits were probably $500,000, not $100,000. Wait, wait, wait, wait. Mm-hmm. They knew of the umbrella policy. Yes. And the umbrella policy had as a condition for coverage on the umbrella policy... Right. ...that there had to be underlying coverage of a half million dollars. Yes. Right. Okay. But when they — when did they actually make the change in response to that, which is — bears on the question of whether, when they answered a question, what's the coverage, $100,000, whether that was true or not? I'm going to need the excerpts of record for both. 6-29. And am I right that that was not really covered in the record? It is in the record, Your Honor. Oh, okay. Go ahead. 6 — if the Court will allow me in it, I would take — I would ask the Court's indulgence on this, because it appears that I would be in trial, but it's necessary because of Your Honor's question to me. I'm going to be referring to four excerpts of record. The first two are excerpt of record 84, in the middle of excerpt of record 84. Excerpt of record 88, again, in the middle of excerpt of record 88. Both are dated 6-29-05. Which is when in relationship to when the lawsuit was filed? The lawsuit was filed on July 27, 2006. Excerpt of record activity log. This is from Mr. Codina of State Farm. This is immediately before. Mr. Codina makes in writing and orally representation directly to Mr. Necessary that the policy limits are $100,000. That's going to be in excerpt of record 88. I'm now going to ask the Court, again, for indulgence in looking at excerpt of record  I'm going to go six lines up in the middle. It says claimant, C-L-M-T. There's a lot of acronyms here. Claimant may have PLUP policy. That means personal liability umbrella policy. That's the million-dollar policy. With other company. PH, that's the policyholder, has seven vehicles currently. And then there's a sentence that ends in the middle of the sentence. It doesn't make sense. Policyholder agent states his limits should have been $500,000 as prior to the accident to satisfy the PLUP requirements. On that same day, excerpt of record 88 goes out to Mr. Necessary. It was a pleasure speaking with you. We've offered $100,000 to settle your case. These are our insurance policy limits stated as categorical fact. Now, if the Court would bear with me for one more set of excerpt of records, a year later, this is a year later, a year later after there's been a total investigation by State Farm as to what the policy limits were by the name of a man for State Farm named Lance Bryant. I'm sorry. I really didn't mean to sidetrack you for such a substantial bulk of your position. I'm not sure that the two excerpts that you've responded to really deal with the question that I've asked. Okay. And perhaps we'll ask State Farm's counsel, why don't you go ahead with your argument, as you had hoped to do before I sidetracked you. Okay. The only point I was going to make, I won't go to the exact excerpts of record, but in April of 2006, now, this is just before the lawsuit has been filed, Mr. Necessary has hired counsel. At the end of April, State Farm knows for sure that limits are $500,000 and a million. Now, it's important to know who made those limits. April of which year? April of 2006, Your Honor. Same year as the lawsuit. This is about five months before the suit is actually filed. The importance here is that Mr. Hoskins, Dexter Hoskins, is the person making these log entries. And what he says in the excerpt of record is that we know the limits are $500,000, we know that there's a million-dollar coverage, and yet he orally and in writing, at the end of July of 2006, states again to counsel that it's $100,000. But that's after the lawsuit is filed.  Excuse me, Your Honor. It's not after the lawsuit is filed. He sends the letter out. Then he finds out the lawsuit has been filed, and within minutes, he calls back and says, oh, we made a mistake. It's really $1.5 million. The letter and the oral statement preceded Mr. Hoskins' knowledge that lawsuit was filed. The second it was filed, it changed. What are you looking for in Jantman? I gather that the premise of Judge Schrader's question is that without the punitives, there wouldn't be $75,000. Correct. But I gather you think there would. Aren't you looking for the fee? Isn't there a case? What is the injury here? The only injury that I can understand, since he didn't settle, he didn't, in fact, rely on it in terms of settling. He relied on it only by going out, if he did. Going out and hiring a lawyer, presumably, and this, I don't know if this is alleged, but I surmise that the result of that in a contingency fee world is that he's now getting $150,000 less than he would because the lawyer is getting the $150,000. Is that what the case is about? Partially true. Also, the delay, the loss of use of money. Mr. Necessary, if he had known what the policy limits are, and let's say Statefarm or chose not to say what they were, he would have gotten a lawyer much earlier. This is there for about $150,000 at least, approximately, and I don't know whether you've alleged that, even without the punitive. Yes, we have. Even without the punitive. Yes. Plus the loss of use of the money, the interest at 10 percent in Arizona, which is the statutory amount, plus the delay and the inconvenience when and there are other. You'd have to have some kind of demonstration of distress, and I don't know if that's in the record. I mean, one of the problems here is the conversion problem. I mean, a lot of this isn't in the record. For example, any demonstration of a loss of interest. It couldn't be in the record because this was right at the beginning of the case. Both sides had asked for more time. Both sides had asked for a hearing before the court. There were never any hearings before the court, and we had not we'd only done two depositions. We'd only done one disclosure statement. Both sides had stipulated that they needed more time. Both sides. But you attach documents. That's the problem. Yes, Your Honor, and that's true. And that converts it, my understanding is, without notice to a summary judgment. But then I believe the next sentence under 12c says, but the parties shall be given a reasonable opportunity to present additional facts in the form of interrogatories, depositions, and the usual discovery. We didn't receive any opportunity, and we asked for it, but we didn't get it. And the district court also applied exactly the wrong standard to both the 12c and the 56c. He construed all evidence under the 56c, the mistake allegation, as being true by the moving party and against the nonmoving party. The lower court, with all due respect, as far as the 12c, found there on page 3 at the bottom that there are no causes of action in contract or tort by a third person against an insurance company, which is just not the law. And he also found that there was a duty requirement, which none of these causes of action required, Your Honor. What would you say is the evidence that you have submitted? I understand they have a – they've submitted some evidence now trying to show this was all just a mistake and they didn't have any intent with regard to fraud. So what is your contrary evidence? Excuse me, Your Honor. What is your contrary evidence from which a jury could infer that there was an intent to defraud? I can tell you exactly, Your Honor. Well, please do. In August of 2005, there was a complete analysis of this case on damages. There was found to be no liability. The amount of damages were going to equal – it was going to exceed the $500,000. This was done by Lance Bryant in August. And there were communications in writing between State Farm and auto owners. And State Farm still, in 05, is saying to auto owners, we've only got $100,000. And they were telling their own insurance, State Farm was, that it's $100,000. This is after State Farm says that they told Mr. Necessary that there was more money, that there was $500,000. And the State Farm said, well, that's $100,000, that's $500,000, that's $100,000. And that seems to me to support the mistake. They have no reason to be telling their insurance that. But they keep changing their story. After that, they go back to the $100,000 again, to Mr. Necessary. But what is your affirmative evidence that negates the fact that they were just really mixed up? The fact that one year and nine months, one year and nine months after this accident occurs, State Farm is still stating in writing that it's $100,000. After, this is, years have gone by. Tape-recorded interviews have been done of the State Farm agent, the adjusters. There's a file on it. State Farm has concluded it's $500,000 plus a million. There's been conversations with the umbrella carrier. Now they know there's $1.5 million. This is in 2005. Now, the statute of limitations is almost run, and the statute's coming up, and they then orally and in writing represent Mr. Necessary's attorney that the limits are $100,000 again. So your evidence is essentially nobody could be that stupid. So therefore, a jury could have inferred that they must amend it. Is that the bottom line? That is with the number, the numerosity. We've gotten up to 14 directly contrary misrepresentations over a period of two years. Nobody's that stupid, especially when it's the same people. Codina and Hoskins. Codina, in June 29th of 2005, he knows that there's $500,000 plus probably a policy. He sends a letter to Mr. Necessary with a release saying, here's 100 grand. This is all we've got. And then a year later, they do it again, only to Mr. Necessary's attorney. Mr. Hoskins does that same thing. Counsel, they put $500,000 on the table. Excuse me? They put $500,000 on the table, ultimately, and they paid it, right? After a year of being in court, Dr. Bisbee- Yeah, but wait just a minute. Yes. Now, how does that somehow square with the notion that the earlier representation was fraudulent as contrasted with mistaken? They got caught. Your client didn't rely basically on that in terms of settling out the case at $100,000, right? He did not. He had no choice, because this is addressed in the Railsback case. And I've got a specific site to it, because the judge in Railsback, now it's a Northwest site, 680 Northwest. And it's at 657, 680 Northwest at 657. It's a recent case, 2004, and it's- From what court? It's from the Supreme Court of South Dakota. And the judge goes to this exact point that's being made by the Court here. It's the judge refers to it in that case as the opportunity cost. The insurance company, if they're immune from fraud and can always just claim the stake, there's nothing to lose by misrepresenting the policy limits, because if they get caught, they can just pay. They can just pay the difference. I mean, there's no harm, no foul. They can just commit fraud. And if they don't, nobody's ever going to know. That's if they get caught, is what you're saying. They were caught. But that- Really, by whom? They were caught because they we, during discovery, got these letters. They came on, didn't they? Excuse me? They came on with the payment, didn't they? And you're saying they got caught? And my question was, caught by whom? Well, by Mr. Necessary's lawyers that read the discovery. Once they filed the lawsuit, there was a document that had to be filed with regard to the amount of insurance, is that right? Yes, there was. As soon as the lawsuit was filed- Once the lawsuit was filed, they affirmatively had it come forward. Yes, they did. They disclosed it as $500,000 plus a million dollar limits. How fast did they do that? How soon after the lawsuit was filed? Well, we were told within moments after they we told them that the lawsuit was filed with the limits were. It was minutes. I probably was, I think it was the same day. It was $100,000 right up until August 27th. And then between August 27th and August 30th, all of a sudden, when State Farm is apprised that there's a lawsuit, they immediately said it's $1.5 million. That's all in writing and it's all part of the record. So it's this immediate change, Your Honor, that gives rise to this is more than a mistake and the numerosity of the allegations. It's $100,000. In fact, even in district court, it's back to $100,000 again. Even after the estoppel certificate was filed, even after the certificate of coverage that it was $1.5 million and $500,000 in the- Excuse me? That's again indicates it was an error, that they just kept screwing. There's no point to them continuing to say $100,000 after they said $500,000, except that they kept, their records were all screwed up. Well, that's what they're saying. They say they have the most up-to-date computer system in the world, and they couldn't get access to the screen. And yet, in their brief, they accuse an attorney of somehow divining the $1.5 million policy limits. We're way over time. I'm sorry. Thank you so much for your attention. Thank you. Good morning, Your Honors. My name is Christopher Robbins. I'm here on behalf of State Farm Mutual Automobile Insurance Company. Your Honors, we agree with the district court that this claim was completely without merit from day one, so I will be happy to answer any questions you have. All right. My question is, well, doesn't everything turn on – first of all, it seems to me there would be a valid fraud claim here if there was fraud. So the question is, why not? Let's assume that there was, in fact, an intent by State Farm Mutual Automobile Insurance Company to hide the policy limit and misrepresent it. Would there be a lawsuit? No. Why? It fails. Every one of the nine elements of fraud has to be proven by clear and convincing evidence. And just to take – I mean, I can pull out, I can talk about any of them, but just looking at their complaint, what they alleged in their complaint is that they rejected the $100,000 offer. I understand. And they went out and hired a lawyer, which ends up costing the client a lot of money, and that they wouldn't have done that if they had been told anywhere before that what the actual limit was, because they would have proceeded to negotiate, presumably, what would have happened in the long run, or they would have tried. So what's wrong with the theory as opposed to the facts? The theory is that the only way they can recover against the Hoffmans in Arizona there is no direct action against the insurance company. The only way they can recover against the Hoffmans is by filing a lawsuit against the Hoffmans. Presumably, they want to hire an attorney to do that, although that's not necessary. Once they reject the settlement offer, their only way to do anything is to do that. Yes, but their proposition is that the policy – that the settlement offer was made with a representation that wasn't true, and that if they had – they asked for the – I assume State Farm had no obligation at that juncture to tell them what the policy limit is, but they did. No obligation whatsoever. But they did. Yes. All right? And once they did, the fact – if they had known that that was not the case and that there was more money available from the insurance company, that the whole proceedings would have gone differently and that they would have said, well, we're not going to take $100,000, why don't you give us $300,000? The answer was, well, we don't have $300,000, but that turns out to be not true. So what's wrong with the theory? Then we'll get to the facts. The – the problem there, Your Honor, is let's suppose that State Farm had said from day one, our insurers have $500,000 limits. What would the necessaries have done? State Farm had evaluated their claim at substantially less than that at the time. So their option would have been to do the one thing that Arizona law permits, which is to sue the Hoffman. So you mean at no point – So they made – Wait. Just a minute. At no point before the lawsuit was filed did State Farm evaluate their claim at anywhere near the policy limit? Initially, when they're – Not initially. Not initially. At any point before the lawsuit was filed. At no point that I am aware of showing anywhere in the record did State Farm evaluate their claim as worth $500,000 or more. To be worth more than $100,000. Ultimately, yes, they did. Not ultimately. At some point before the lawsuit was filed. I – I would have to check on that, Your Honor. What I believe the answer is yes, they did evaluate it at about $250,000 sometime before the lawsuit. All right. All right. They did tell – and they did say that the $100,000 was the policy limit. Initially, they said the $100,000 was the policy limit. Then the policy limit was reformed. It was. It was always – When did that – when did that take place? When did the reformation of the policy limits take place? The – the coverage question – State Farm uses the coverage question form. That was done in August of 2005. And it was communicated? What – what happened is sometime after that, the – the person who was doing last time – You didn't answer my question. Okay. Was it communicated to – We communicated to Mr. Necessary that the policy limit was in excess of $100,000  That was communicated. They deny it, but that's all over the logs that – the computer activity log. All right. But that's a fact question, and that seems to me is not going to get you summary judgment. Okay. All right. So that's why I said let's do the theory first and then the facts. So then – I'd be happy to leave the facts, because there are – I mean, there are no disputed facts, Your Honor, and we submit that this case could have been decided on the motion for judgment on the pleadings as we initially suggested. All right. So you agree essentially that there are disputed facts, and if we have to get to the facts, you're not – No. If the theory works, you're not going to be able to get by the facts. No. No, Your Honor. There are no disputed facts. There are no disputed facts, but I will move to the law. Just tell me there are disputed facts. Excuse me? You just told me that there are disputed facts. There's a disputed fact about – he said – All right. What are the undisputed facts that support summary judgment for you, assuming that the theory is a valid theory? Okay. Let me – let me – may I move back to the law, or do you want me to talk about the facts? Well, I want you to talk about what I just asked you to talk about, which is assuming that there is a valid theory here. What are the undisputed facts on which you win? The undisputed facts are that the Hoffmans had lowered their policy limits on all of their vehicles and all of their policies to $100,000 at the – shortly before the time of the accident. When they find out that they only have $100,000, in October of 2004, after the accident, they go back to their agent and say, this is wrong. I want to increase my limit on all of my policies to $500,000, showing again that they only had $100,000 at the time. Because of – actually, because of Mr. Necessary's questioning, he said, I don't want $100,000. That's not enough. Is there any more coverage available? State Farm then conducted the most extensive investigation. It talked to its insurers. It found out the problem that they had mistakenly – they had mistakenly reduced their limit to $100,000. State Farm recognized the terrible position they were in, and in the utmost good faith, with no obligation to do so, State Farm internally agreed to reform the coverage for this limit. Okay. But that's all internally. How does this help Mr. Necessary? Because there is no obligation on an insurance company to tell third-party claimants what the policy limits are. Well, but you did. We did tell them it was $100,000, and then – and then when they reformed the policy limit, they called him and told him the limit is higher. And that's the security. So that's not going to get you there. You said August 2005? Yes. Didn't we get a letter that talked about the fact that there was a mistake and that August 2006 was the date instead of 2005? Oh, I can explain what happened, Your Honor. Go ahead. January 2006, Mr. Necessary – I'm just going to stop you for a minute. So up until this point, we now have a dispute as to whether you told him anything. So that's not going to get you summary judgment. So let's go on. Right? Because you said that. You said that – Okay. You said you told him, and he says you didn't. So that's not going to get you – There's a dispute about that one factor, Your Honor. That doesn't complete summary judgment for this reason. Okay. Right. In January 2006, Mr. Necessary comes and says, you know, what's going on? Let's get this show on the road. I may have to hire attorneys. And in fact, shortly thereafter, he does. He retains Mr. Pillinger and Mr. Cruz. Okay? In April, the new claim representative, Mr. Hoskins, comes on, and he does recognize that the policy limit has been reformed. He does evaluate the claim of Mr. Necessary higher than it was before, but still substantially less than that policy limit. On July 27th of 2006, they file their lawsuit against the Hoffmans, which is what they need to do. If they can't settle with the insurance carrier, they need to sue the negligent parties. Was there an attempt? On the next day, Mr. Hoskins, on the next day, Mr. Hoskins sends out the letter saying there's a $100,000 limit because forgetting he's got 250 cases on his or 250 claims on his desk, and he forgets, he forgets he makes a mistake. He forgets that there is a $500,000 limit. So the bottom line, just a minute, is that there is no evidence, undisputed evidence, before the lawsuit was filed, that Mr. Necessary was told that the $100,000 was wrong. Am I right about that? Not quite, Your Honor, because the Necessary's attorney, Mr. Cruz, tells Mr. Hoskins you are wrong. There are higher limits, and we also believe that there are, that there's an umbrella policy. And when Mr. Hoskins hears that, he sent the July 28th letter out, I believe it was on a Friday, and on July 1st, he sends the letter out saying you're right, you're right, there are higher limits. There are $500,000 limits available under the State Farm policy. So you're saying that the first indication of the higher coverage came from Mr. Necessary's counsel? That is the first? Mr. Necessary's counsel knew, yes, Your Honor, yes. They knew. They've never, they had never asked about the policy limits before this in their letter of representation, in anything. The only thing that they were saying is we now represent the Necessary's, let's evaluate the value of this claim. They never say here's what the policy limit is or is not. Now. I thought you told us that the communication that said there's more that's available came from Mr. Necessary's counsel to Hoskins. Yes. Didn't you say that? Yes. Yes. And what, does the record indicate what their source of information was on that score? If you'll look at the excerpts of the records at 178, here's the letter that Mr. Hoskins sent, and this is really curious, is because these things are always cut off. You see at the bottom, the handwriting on the letter, it says, insured for $500,000, $500,000. R.C., Richard Cruz, Mr. Necessary's attorney. That's his note on the letter. He calls Mr. Hoskins and says, you're wrong. There isn't a $100,000 limit. Is that an undisputed fact? This is what they submitted, Your Honor. This is from them. Had he called them? This is after the insured has to get a lawyer. The lawyer looks into it, says it's $500,000. The undisputed facts seem to be that prior to that time, State Farm had represented that it was $100,000. Yes. And so you want us to conclude it's an undisputed fact that that was a mistake? I want you to conclude that, yes, Your Honor, but that's not necessary for us to prevail in this action. The overriding thing of all of this is that they rejected the $100,000 offer. They rejected that. They did not want to settle. Their option at that time, if they want to recover against the Hoffmans, is to sue the Hoffmans. It's their choice to sue the Hoffmans. It's their choice to retain attorneys. It's their choice to incur attorney's fees and costs. Would you say exactly the same thing? Let's suppose that State Farm did have a policy of telling people erroneous information when asked about coverage limits. Okay. All right. Your theory would still be the same. It doesn't matter. Is that right? It doesn't matter. So it doesn't matter if State Farm is going around trying to essentially make settlements based on erroneous facts because people are not going. I mean, this is a somewhat unusual situation because apparently they had some reason to think that the insurance had enough money that it was worth suing them. But ordinarily, I mean, for most of the population, what's available is the insurance policy and nothing else. So if you can't get to the insurance policy, you're not going to file a lawsuit because there's nothing to get. I agree, Your Honor. And so if somebody had actually settled for the $100,000 because that's all there was, would there still be no problem? I think there might be a problem if they had settled for $100,000. I will tell you what State Farm would have done. It would have done just what it did in this case. It would have reformed the policy and it would have informed them that there was, in fact, more money available. Let's say ---- But that's exactly what it didn't do here. Excuse me? I mean, even on your theory, the only evidence you have that you ever did that or we have no evidence that you ever told them that the policy was $500,000. Do you have any evidence of that? There's no duty to do that, Your Honor. In fact, we have to get permission from our insureds to reveal policy limits. We could initially ---- But you did reveal the policy limit. Did you get permission from the insured when you did reveal it? Yes. Yes. After it was reformed, State Farm went back to the Hoffmans, their insureds, and asked permission to disclose the policy limit. What about before it was reformed? Initially, with the $100,000, when the policy limit was, in fact, $100,000, they had evaluated the necessaries claim in excess of that $100,000 policy limit and offered to settle for the $100,000. That was my question. Here's the key, Your Honor. My question was did you, in order to tell them the $100,000 limit, you had to ask your insurers. Did you do that? When the damages exceed $100,000, it's not necessary to go back. When they exceed the policy limits. I don't believe that's in the record, Your Honor. Okay. Thank you. If I could just say one point. They were paid $500,000, a half a million dollars. They should be jumping for joy that State Farm reformed this policy limit. Thank you, Your Honors. Counsel, one question, if I may. What's State Farm's principal place of business? Bloomington, Illinois. Thank you. Thank you, Your Honor. Are there any questions for Plaintiff's counsel? No, thank you. Thank you. The case just argued is submitted for decision.
judges: Shadur, Schroeder, Berzon